**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. CR-24-146-R** |
| | ) | |
| **CHONG IU PHU,** | ) | |
| **CHANH IU PHU,** | ) | |
| **MATTHEW ALAN STACY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

The following motions are pending before the Court:

- Defendant Chong IU Phu's Motion to Strike Prejudicial Surplusage [Doc. No. 89]
- Defendant Chanh "Shawn" IU Phu's Motion to Strike Surplus language from the Indictment [Doc. No. 80]
- Defendant Stacy's Motion to Dismiss as 21 U.S.C. §§ 841 and 856 are Void for Vagueness as Applied Here [Doc. No. 82]
- Defendant Stacy's Motion to Dismiss for Failure to Plea Necessary Mens Rea Element [Doc. No. 83]
- Defendant Stacy's Motion to Dismiss for Improper Classification of Marijuana Under the Controlled Substances Act [Doc. No. 84]
- Defendant Chanh "Shawn" IU Phu's Motion to Dismiss Indictment as Oklahoma's Residency Requirements in Marijuana Grow Ownership is Unconstitutional Under the Dormant Commerce Clause [Doc. No. 92]
- Defendant Stacy's Motion to Dismiss Under the Commerce Clause [Doc. No. 85]
- Defendant Chong IU Phu's Motion for a Bill of Particulars [Doc. No. 88]
- Defendant Chanh "Shawn" IU Phu's Motion for Change of Venue Due to Negative and Biased Publicity and Publicized Racial Comments of Oklahoma Governor Kevin Stitt and Other(s) of Chinese or Asian Descent [Doc. No. 93]

A hearing was held on September 24, 2024 regarding Defendant Shawn Phu's Motion to

Dismiss Indictment as Oklahoma's Residency Requirements in Marijuana Grow

Ownership is Unconstitutional Under the Dormant Commerce Clause and the parties

submitted supplemental briefing [Doc. Nos. 130, 135, 141, 142, 152]. Each of these motions is now fully briefed and at issue.[1]

## BACKGROUND

Defendants stand charged by the grand jury in an eight count Indictment with marijuana related offenses. Broadly speaking, Count 1 alleges that Mr. Stacy and Mr. Alex Phu[2] conspired to help non-resident marijuana traffickers evade the residency requirements in Oklahoma's medical marijuana laws. The conspiracy purportedly involved Mr. Alex Phu, a real estate agent, brokering land sales for non-residents to use as marijuana grow operations. Mr. Stacy, an attorney, would then allegedly assist the non-residents with obtaining a state license and registration to grow marijuana by identifying an Oklahoma resident as the owner on the license application. The Indictment describes the marijuana grows established by Mr. Alex Phu and Mr. Stacy as operating on the black market and outside the regulatory confines of Oklahoma's medical marijuana program.

Count 3 alleges a separate drug conspiracy between Mr. Alex Phu and his brother, Mr. Shawn Phu. The Indictment asserts that Mr. Alex Phu, with the assistance of Mr. Shawn Phu, brokered land sales for non-residents, directed his employees to instruct the

---

[1] Defendants have each filed motions seeking to join in motions filed by their co-defendants. *See* Defendant Chong Phu's Motion to Join and Adopt Motions filed by Co-Defendants [Doc. No. 94]; Defendant Chanh Phu's Motion for Joinder to Co-Defendants' Motions [Doc. No. 96]; Defendant Chong Phu's Motion to Join [Doc. No. 141]; and Defendant Stacy's Motion to Join [Doc. No. 142]. These motions are granted for the limited purpose of allowing the defendant to join in their co-defendant's motion.

[2] The Court refers to Defendants Chong Phu and Chanh Phu by their preferred names, Alex Phu and Shawn Phu.

non-citizen buyers to find an individual with legal status under whose name to place the land, rented properties to drug traffickers, and provided services such as electrical and HVAC work to ensure the marijuana farms remained operational.

In addition to these conspiracy allegations, the Indictment alleges that Mr. Stacy maintained a drug involved premises (Count 2), Mr. Alex Phu maintained a drug involved premises (Counts 4, 5, 7, 8), and Mr. Shawn Phu possessed marijuana with intent to distribute (Count 6). The various motions that are at issue are addressed separately below.

## DISCUSSION

### A. Motion for Bill of Particulars

Defendant Alex Phu seeks a Bill of Particulars as to counts 1 and 3 of the Indictment, which each allege a drug conspiracy. Mr. Alex Phu contends the alleged conspiracies overlap and the government should therefore be ordered to identify the specifics acts and coconspirators that distinguish the conspiracies. The United States contends the Indictment is sufficiently detailed and further represents that the information sought will be produced in discovery.

Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an Indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" If a defendant believes an Indictment is insufficient, he may move for a bill of particulars under Fed.R.Crim.P. 7(f). As explained in *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996),

> [t]he purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense. A bill of particulars is not necessary if the indictment sets forth the elements of

3

> the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial. The defendant is not entitled to notice of all of the *evidence* the government intends to produce, but only the *theory* of the government's case.

(internal quotation marks, citations and brackets omitted).

The Indictment in this case is sufficiently precise to inform Defendant of the charges against him and allow him to prepare his defense. Counts 1 and 3 each respectively set out the essential elements of the offense charged and describe the alleged scheme underlying the conspiracy. Although Mr. Alex Phu complains the Indictment does not identify the separate overt acts supporting each conspiracy charge or the unnamed coconspirators, there is more than enough detail in the Indictment to apprise Defendants of the government's theory of the case and to allow them to meet the charges. *See United States v. Miller*, 250 F.R.D. 588, 600 (D. Kan. 2008) (explaining that an Indictment needed not "identity of all participants in the conspiracy" or "the specific terms of the conspiratorial agreement"); *United States v. Welch*, 198 F.R.D. 545, 551 (D. Utah 2001) ("There is no indication of any substantive need for the identity of the unidentified coconspirators for any substantive purpose of meeting the charge or presenting a defense."). Mr. Alex Phu's request is more geared toward discovering evidentiary detail, which is not the purpose of a Bill of Particulars. *See Dunn*, 841 F.2d at 1028 ("A bill of particulars, however, is not a discovery device[.]").

Defendant Chong IU Phu's Motion for a Bill of Particulars [Doc. No. 88] is therefore DENIED.

**B. Motions to Strike Surplusage**

Defendants Alex Phu and Shawn Phu both move to strike language from the Indictment that they describe as irrelevant, confusing, or prejudicial. Federal Rule of Criminal Procedure 7(d) provides that a court may, upon motion by a defendant, strike surplusage from the Indictment. The rule grants district courts discretion to strike "allegations not relevant to the charge at issue and inflammatory and prejudicial to the defendant." *United States v. Collins*, 920 F.2d 619, 631 (10th Cir. 1990). "Courts rarely strike portions of the indictment as surplusage, and a proper instruction to the jury ordinarily can alleviate the potential prejudicial effect of contested allegations in the indictment." *United States v. Daniels*, 159 F. Supp. 2d 1285, 1300 (D. Kan. 2001) (internal quotation marks and citations omitted).

Mr. Shawn Phu and Mr. Alex Phu both take issue with the Indictment's inclusion of certain terms and phrases that they contend are immaterial and inflammatory, including "black market", "one stop shop for marijuana traffickers", "regularly" brokered land sales, "armed" security guards, "trafficker clients", and "marijuana stash house". These terms are used to explain how the alleged conspiracy operated and why the charged conduct was unlawful. The terms are therefore at least minimally relevant to the crimes charged and, moreover, none of them are so inflammatory as to risk unduly prejudicing Defendants.

Mr. Shawn Phu next moves to strike from Count 3 the phrase "from in or about August 2019" as confusing given the introductory section's reference to changes to Oklahoma's licensing requirements that occurred on August 31, 2019. His argument is premised on his belief that the Indictment suggests that his activities were lawful prior to

the August 31, 2019 change in Oklahoma law. However, as the government explains in its response, this paragraph provides context and explanation for how Defendants modified their activities following the August 31, 2019 change and does not state that the conduct was lawful prior to that date.

Mr. Shawn Phu also moves to strike portions of the introductory section of the Indictment that he believes incorrectly imply that land ownership by non-citizens is prohibited in Oklahoma. This argument is unpersuasive given that the Indictment describes Oklahoma's residency requirements for obtaining a license to grow marijuana, not the requirements for land ownership by non-citizens. He also moves to strike two paragraphs from the introductory section because they make no reference to him and discuss only his co-defendants. These paragraphs provide information necessary to understand the roles the various defendants played in the alleged conspiracies and is not immaterial to the charges against Mr. Shawn Phu.

Mr. Alex Phu also seeks to strike portions of the introductory section that describe the problems affecting Oklahoma's medical marijuana program. Apart from providing important context, this paragraph describes the scheme that underlies the alleged conspiracy and is therefore not unrelated or immaterial to the charges.

Mr. Shawn Phu and Mr. Alex Phu both seek to strike phrases and references to speaking Mandarin or to assisting clients that did not speak English, contending that these references are inflammatory and risk prejudicing the jury based on Defendants' nationality. These limited references to speaking another language are not inflammatory and again, provide relevant information about how the alleged conspiracy operated.

Defendant Chanh "Shawn" IU Phu's Motion to Strike Surplus Language from the Indictment [Doc. No. 80] and Defendant Chong IU Phu's Motion to Strike Prejudicial Surplusage [Doc. No. 89] are therefore DENIED.

### C. Motion to Change Venue

Defendant Shawn Phu moves for a change of venue on the ground that he is unable to obtain a fair trial due to inflammatory publicity concerning Chinese nationals in the marijuana industry.

The Sixth Amendment guarantees an accused the right to a trial by "an impartial jury" and the Fifth Amendment ensures no person shall "be deprived of life, liberty, or property, without due process of law." Accordingly, Federal Rule of Criminal Procedure 21(a) requires a change of venue "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." This standard is difficult to meet, particular where the court is asked to presume prejudice on the basis of pretrial publicity. Indeed, "[t]he Supreme Court has presumed prejudice from pretrial publicity alone only in exceptional settings—where the trial became 'a hollow formality' or when the courthouse proceedings were overrun by the press 'to accommodate the public appetite for carnival." *Gardner v. Galetka*, 568 F.3d 862, 888 (10th Cir. 2009) (internal quotation marks and citations omitted). Thus, "[s]imply showing that all the jurors knew about the case and that there was extensive pretrial publicity will not suffice." *Id.* (quotation omitted). Put another way, "[p]rominence does not necessarily produce prejudice, and juror impartiality…does not require ignorance." *Skilling v. United States*, 561 U.S. 358, 381 (2010).

7

Although Mr. Shawn Phu highlights some negative public comments about Chinese nationals purchasing land in Oklahoma, he has failed to show that these types of comments are pervasive or that they are directed at his specific case. He makes no showing that this is one of those extraordinary cases where pretrial publicity is so widespread and toxic as to deprive him of a fair and impartial jury. Further, despite his protestations to the contrary, there is nothing to suggest that the Court's voir dire process is inadequate to raise these issues and ensure the impartiality of the jury panel. *See United States v. Pedrazza*, 27 F.3d 1515, 1525 (10th Cir.1994) ("Whether a jury harbors prejudice related to pretrial publicity is best determined during voir dire examination.").

Defendant Chanh "Shawn" IU Phu's Motion for Change of Venue Due to Negative and Biased Publicity and Publicized Racial Comments of Oklahoma Governor Kevin Stitt and Other(s) of Chinese or Asian Descent [Doc. No. 93] is therefore DENIED without prejudice.

### D. Motion to Dismiss Under the Commerce Clause

Mr. Stacy moves to dismiss the Indictment on the ground that the federal prohibition on the intrastate manufacture and distribution of marijuana is no longer a necessary or proper exercise of Congress' power under the Commerce Clause. This argument is foreclosed by the Supreme Court's decision in *Gonzales v. Raich*, 545 U.S. 1 (2005), which held that the prohibition on the local cultivation and use of medical marijuana is within Congress' Commerce Clause authority.

Defendant Stacy's Motion to Dismiss Under the Commerce Clause [Doc. No. 85] is therefore DENIED.

### E. Motion to Dismiss for Failure to Plead Necessary *Mens Rea* Element

Mr. Stacy moves to dismiss the Indictment on the ground that a federal prosecution under the Controlled Substances Act requires proof that the defendant knowingly and intentionally violated his state's laws governing medical marijuana. Mr. Stacy's argument relies on a combination of the Supreme Court's holding in *Ruan v. United States*, 597 U.S. 450 (2022), and Congress' repeated enactment of an appropriations Rider knows as the Rohrabacher-Farr Amendment. However, neither *Ruan* nor the appropriations rider compel the outcome Mr. Stacy seeks.

Mr. Stacy's argument starts with *Ruan*, 597 U.S. at 454, a consolidated case that addressed the prosecution of two doctors for unlawfully dispensing and distributing drugs in violation of § 841 of the Controlled Substances Act. Section 841(a) "makes it a federal crime, *'[e]xcept as authorized*[,] ... for any person knowingly or intentionally ... to manufacture, distribute, or dispense ... a controlled substance,' such as opioids." *Id.* (quoting 21 U.S.C. § 841(a)) (brackets and emphasis in *Ruan*). Relying on the "except as authorized" language contained in the statute, the doctors argued that their conduct was lawful because the drugs were dispensed pursuant to a valid prescription. *Id.* at 455. The question presented to the Supreme Court was whether the "knowingly or intentionally" state of mind contained in § 841 also applied to the phrase "[e]xcept as authorized." *Id.* at 454.

The Supreme Court found that it did. In reaching this conclusion, the Court first noted that, given the presumption that Congress intends to require a defendant to possess a culpable mental state, a statute's general scienter requirement may be interpreted as

modifying "not only the words directly following it, but also those other statutory terms that 'separate wrongful from innocent acts.'" *Id.* at 458 (quoting *Rehaif v. United States*, 588 U.S. 225, 232 (2019)). The Court then applied this principle to the Controlled Substances Act:

> Section 841 contains a general scienter provision—"knowingly or intentionally." And in § 841 prosecutions, a lack of authorization is often what separates wrongfulness from innocence. Defendants who produce evidence that they are "authorized" to dispense controlled substances are often doctors dispensing drugs via prescription. We normally would not view such dispensations as inherently illegitimate; we expect, and indeed usually want, doctors to prescribe the medications that their patients need. In § 841 prosecutions, then, it is the fact that the doctor issued an unauthorized prescription that renders his or her conduct wrongful, not the fact of the dispensation itself. In other words, authorization plays a "crucial" role in separating innocent conduct—and, in the case of doctors, socially beneficial conduct—from wrongful conduct. Applying § 841's "knowingly or intentionally" mens rea to the authorization clause thus "helps advance the purpose of scienter, for it helps to separate wrongful from innocent acts."

*Id.* at 458-59 (internal citations omitted). The Court also noted that the severe penalties that accompany a § 841 violation and the ambiguous regulatory language defining an authorized prescription "counsel in favor of a strong scienter requirement." *Id.* at 459-460.

Mr. Stacy analogizes his case to the facts in *Ruan* to argue that § 841's knowingly and intentionally mens rea should also apply to the issue of whether his conduct was authorized by state law. As Mr. Stacy frames it, the crucial fact that separates wrongful conduct from innocent behavior is whether he was acting in compliance with Oklahoma's state medical marijuana laws. Further, he argues, the ambiguous regulatory framework surrounding these state laws, the severe penalties that accompany a violation of § 841, and the fact that the charged conduct is premised on his work as an attorney providing legal

advice all weigh in favor of a strong scienter requirement. But there is a crucial difference between this case and *Ruan*: the Controlled Substances Act authorizes doctors to prescribe certain drugs pursuant to a valid prescription whereas no one, including lawyers providing legal services, are authorized by federal law to possess, manufacture, or distribute marijuana. *See id.* at 454-455.

Mr. Stacy recognizes this distinction and does not claim the CSA itself includes a provision authorizing the charged conduct. Instead, he argues that the Rohrabacher-Farr Amendment, a congressional appropriations rider that prohibits the Department of Justice from spending funds to prevent states' implementation of their own medical marijuana laws, is the "functional analogue" to the "except as authorized" language contained in § 841. By virtue of the successive enactment of this appropriations rider, Mr. Stacy contends, Congress has expressed its clear intent that a citizen acting in compliance with state medical marijuana law is authorized to engage in conduct that facially violates the Controlled Substances Act.

This interpretation of the Rider's effect on the Controlled Substances Act goes too far. As explained by the Sixth Circuit in *United States v. Trevino*, 7 F.4th 414, 427 (6th Cir. 2021),

> [s]ection 538 [the appropriations rider] did not alter the CSA's substance. The Supreme Court has said that Congress may amend substantive law in an appropriations rider, but the rider must do so "clearly." And "[t]he doctrine disfavoring repeals by implication ... applies with even greater force when the claimed repeal rests solely on an Appropriations Act." Though Section 538 purports to temporarily deny funding for the prosecution of certain crimes, the rider's text contains no suggestion that the substantive conduct prohibited by the CSA has now been made legal. Thus, even if Section 538

> validly denies funding for the prosecution of certain conduct, that conduct remains criminal nonetheless.

(internal citations omitted). The Ninth Circuit reached the same conclusion about the limited effect of the appropriations rider:

> To be clear, § 542 [the appropriations rider] does not provide immunity from prosecution for federal marijuana offenses. The CSA prohibits the manufacture, distribution, and possession of marijuana. Anyone in any state who possesses, distributes, or manufactures marijuana for medical or recreational purposes (or attempts or conspires to do so) is committing a federal crime. The federal government can prosecute such offenses for up to five years after they occur. Congress currently restricts the government from spending certain funds to prosecute certain individuals. But Congress could restore funding tomorrow, a year from now, or four years from now, and the government could then prosecute individuals who committed offenses while the government lacked funding.

> Nor does any state law "legalize" possession, distribution, or manufacture of marijuana. Under the Supremacy Clause of the Constitution, state laws cannot permit what federal law prohibits. Thus, while the CSA remains in effect, states cannot actually authorize the manufacture, distribution, or possession of marijuana. Such activity remains prohibited by federal law.

*United States v. McIntosh*, 833 F.3d 1163, 1179 n.5 (9th Cir. 2016) (internal citation omitted); *see also United States v. Doolin,* 93 F.4th 1094, 1096 (8th Cir. 2024) ("Preliminarily, we note that, regardless of the laws of any state or any limits on prosecutorial funding, marijuana possession remains illegal under federal law.").

Contrary to Mr. Stacy' position, the Rider does not alter the CSA, make a violation of state medical marijuana laws a predicate fact to a CSA violation, or otherwise permit the possession, distribution or manufacture of medical marijuana that complies with state law. Consequently, there is no basis for extending § 841's "knowingly or intentionally" mens rea to the issue of whether Mr. Stacy complied with state law. Although compliance

with state law may have some bearing on the DOJ's ability to expend funds on CSA prosecutions, compliance with state law does not bear on whether a defendant violated the CSA.

Mr. Stacy's Motion to Dismiss for Failure to Plea Necessary Mens Rea Element [Doc. No. 83] is therefore DENIED.

### F. Motion to Dismiss as Void for Vagueness

Mr. Stacy moves to dismiss all charges on the ground that sections §§ 841 and 856 of the Controlled Substances Act are void for vagueness as applied to him. As previously noted, § 841(a)(1) makes it unlawful "for any person knowingly or intentionally--(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;" including marijuana. Section 856(a)(2) makes it unlawful to "manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance."

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A statute can "be impermissibly vague for either of two independent reasons." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). First, if it fails to provide fair notice as to the prohibited conduct and

second, if it authorizes or even encourages arbitrary enforcement. *Id.* An as-applied vagueness challenge, like the one raised here, "tests the application of [the statute] to the facts of a plaintiff's concrete case." *United States v. Lesh*, 107 F.4th 1239, 1246 (10th Cir. 2024). Of course, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *United States v. Day*, 223 F.3d 1225, 1228 (10th Cir. 2000).

Mr. Stacy argues that applying these statutes in the manner done here – without any consideration of his knowledge or intent to violate state medical marijuana laws – "clearly violates the void-for-vagueness doctrine" by failing to provide him fair notice that the conduct was prohibited and by encouraging arbitrary and discriminatory enforcement. His argument is essentially that applying the CSA without proof that a defendant knowingly and intentionally violated state medical marijuana laws creates unconstitutional traps for the unwary and grants federal prosecutors an impermissible amount of discretion.

To the extent this argument rehashes Mr. Stacy's contention that a violation of the CSA requires the government to plead and prove that a defendant knowingly and intentionally violated state law, the argument is rejected for the reasons already discussed. To the extent the Mr. Stacy separately argues that application of the CSA is unconstitutionally vague as applied to him, that argument is also rejected.

In support of his vagueness argument, Mr. Stacy makes much of the "contradictory and unstable state of affairs" that exists with respect to federal marijuana law enforcement. *Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 2237 (2021) (Thomas, J. statement respecting denial of certiorari). But even accepting that description of the federal government's enforcement approach, it does not render the application of the CSA

14

unconstitutionally vague as applied here. The CSA "flatly forbids the intrastate possession, cultivation, or distribution of marijuana." *Id.* "Nothing about this statute is 'ambiguous'" and neither Oklahoma's state medical marijuana laws nor the congressional appropriations rider renders it otherwise. *Trevino*, 7 F.4th at 427.

Mr. Stacy is charged with assisting otherwise unqualified persons with obtaining a state license to commercially grow marijuana and with knowingly leasing his property to an unlicensed marijuana farm. This conduct falls squarely within the scope of activities prohibited by the CSA and "remains prohibited by federal law" regardless of state law or the Rider. *Id.*; *McIntosh*, 833 F.3d at 1179 n.5

Mr. Stacy's Motion to Dismiss as 21 U.S.C. §§ 841 and 856 are Void for Vagueness as Applied Here [Doc. No. 82] is therefore DENIED.

## G. Motion to Dismiss for Improper Classification of Marijuana Under the Controlled Substances Act

Defendant Stacy moves to dismiss the Indictment on the ground that marijuana is improperly classified as a Schedule I controlled substance in the CSA. In making this argument, he relies heavily on a 2024 notice of proposed rulemaking to reclassify marijuana as a Schedule III controlled substance.[3]

The CSA "places controlled substances into five schedules based on three factors: '[1] their accepted medical uses, [2] the potential for abuse, and [3] their psychological and physical effects on the body.'" *United States v. Amalfi*, 47 F.4th 114, 120 (2d Cir. 2022) (quoting *Gonzales v. Raich*, 545 U.S. 1, 13 (2005)). "To fall under Schedule I—the strictest

---

[3] *See* https://www.dea.gov/sites/default/files/2024-05/Scheduling%20NPRM%20508.pdf.

schedule—a controlled substance must have (1) 'a high potential for abuse,' (2) 'no currently accepted medical use in treatment in the United States,' and (3) 'a lack of accepted safety for use of the drug or other substance under medical supervision.'" *Id.* (quoting 21 U.S.C. § 812(b)(1)). The CSA also "provides for the periodic updating of schedules and delegates authority to the Attorney General, after consultation with the Secretary of Health and Human Services, to add, remove, or transfer substances to, from, or between  schedules." *Raich*, 545 U.S. at 14-15. Further, "[t]hose seeking to challenge the government's scheduling of a controlled substance can file an administrative petition and, if necessary, obtain review of an adverse determination in a federal circuit court." *Amalfi*, 47 F.4th at 120 (citing 21 U.S.C. § 877). Although "[t]here have been several attempts to reclassify marijuana through the CSA's administrative process, … 'it remains a Schedule I drug.'" *Id.* (quoting *Raich*, 545 U.S. at 15).

Mr. Stacy's motion identifies three avenues by which the purportedly improper classification of marijuana leads to dismissal of the charges. First, he contends that dismissal is warranted because marijuana no longer meets the statutory factors for classifying a controlled substance as a Schedule I drug. This is not the proper forum for that type of challenge.[4] "The CSA establishes a process for seeking reconsideration of a

---

[4] The Tenth circuit's decision in *United States v. Sullivan*, 967 F.2d 370 (10th Cir. 1992) does not suggest otherwise. In *Sullivan*, the Tenth Circuit considered whether amphetamine was properly reclassified from a Schedule III to a Schedule II controlled substance. *Id.* at 372-73. The specific issue was whether the Secretary of the Department of Health, Education, and Welfare provided a written scientific and medical evaluation, which is statutorily required prior to reclassification. *Id.* The Tenth Circuit found that an adequate evaluation was provided and the substance was therefore properly reclassified. *Id.* The Tenth Circuit did not, however, review the merits of the Secretary's determination that

controlled substance's scheduling based on the CSA's statutory factors, and that process requires individuals to file an administrative petition, the denial of which is directly reviewable in the courts of appeals." *Amalfi*, 47 F.4th at 120 (citing 21 U.S.C. §§ 811(a), 877); *see also United States v. Forrester,* 616 F.3d 929, 937 (9th Cir. 2010) (rejecting criminal defendant's argument that ecstasy was improperly classified under Schedule I and holding "that substantive collateral attacks on permanent scheduling orders are impermissible in criminal cases where defendants' sentences will be determined by those scheduling orders"); *United States v. Carlson*, 87 F.3d 440, 446 (11th Cir. 1996) (rejecting defendant's challenge to scheduling of MDMA and holding that a defendant cannot "make a collateral attack on a final regulatory decision in a criminal case"); *United States v. Young*, No. 3:09-CR-00003, 2009 WL 899671, at *2 (N.D. Ind. Mar. 30, 2009) ("The court lacks jurisdiction to consider Mr. Young's challenge to placement of BZP on the list of Schedule I controlled substances[.]").

Second, Mr. Stacy argues that marijuana's Schedule I classification violates the Fifth Amendment's Due Process and Equal Protection guarantees. Unlike Mr. Stacy's statutory challenge, this constitutional attack on the classification of marijuana is not necessarily foreclosed by his failure to exhaust administrative remedies under the CSA. *See Amalfi*, 47 F.4th at 122. But the argument nevertheless fails on the merits. Where, as here, "a challenged statute does not implicate suspect or quasi-suspect classifications or burden fundamental rights," rational basis review applies. *Id.* at 124. Mr. Stacy does not

---

amphetamine met the statutory criteria for listing it as a schedule II controlled substance. *Id.*

dispute that this is the appropriate standard of review, but argues that there is no rational basis for classifying marijuana as a Schedule I controlled substance. Under rational basis review, the challenged law is afforded a "strong presumption of validity" and it will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (quotation marks and citations omitted). Importantly, "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* (brackets, quotation marks, and citation omitted). "Thus, even if marijuana's classification would not survive an administrative petition for rescheduling because it fails to meet the statute's enumerated criteria, it is not unconstitutional unless there is no conceivable basis for placing marijuana on the strictest schedule." *Amalfi*, 47 F.4th at 125.

As the government notes, there is a long line of cases finding that marijuana's classification as a Schedule I controlled substance survives rational basis review, including the Second Circuit in *Amalfi* just a little over two years ago. The Court sees no reason to reach a different conclusion here. Although the recent proposal to reclassify marijuana as a Schedule III controlled substance certainly lends credence to an argument that marijuana no longer meets the statutory factors enumerated in the CSA, that is not sufficient to "negative every conceivable basis" for classifying marijuana in Schedule I. In this regard, the Court finds the reasoning in *United States v. Green*, 222 F. Supp. 3d 267, 279 (W.D.N.Y. 2016), aff'd sub nom. *United States v. Amalfi*, 47 F.4th 114 (2d Cir. 2022), persuasive:

> Even if there is a legitimate medical purpose associated with marijuana, under the rational basis standard of review, there are numerous conceivable public health and safety grounds that could justify Congress's and the DEA's continued regulation of marijuana as a Schedule I controlled substance. Under no reasonable view of the facts could it be concluded that it is irrational for Congress to continue to regulate marijuana in the manner which it has, and for the DEA to continue to adhere to a Schedule I classification for marijuana.

Because the classification survives rational basis review, Mr. Stacy's equal protection and due process claim is rejected.

In a final attempt to dismiss the charges based on marijuana's Schedule I classification, Mr. Stacy asks the Court to exercise its equitable powers to foreclose the prosecution based on what he describes as the government's clearly contradictory positions. *See United States v. Stevens,* 119 F. App'x 222, 226 (10th Cir. 2004) ("The doctrine of judicial estoppel bars a party from adopting inconsistent positions in the same or related litigation.") (brackets and quotation marks omitted). More specifically, he argues that prosecuting this case based on a Schedule I classification contradicts the position taken by the Attorney General in its proposal to reclassify marijuana. The problem with this argument, as the Court see it, is that the government has consistently maintained in this proceeding that marijuana is properly classified as a Schedule I controlled substance. The possible prospective reclassification of marijuana does not undermine this position or otherwise compromise the integrity of the judicial process such that application of the judicial estoppel doctrine is appropriate in this case.

Defendant Stacy's Motion to Dismiss for Improper Classification of Marijuana Under the Controlled Substances Act [Doc. No. 84] is therefore DENIED.

### H. Dormant Commerce Clause

Last, Mr. Shawn Phu moves to dismiss the Indictment on the ground that Oklahoma's residency requirements for marijuana grow ownership violate the dormant Commerce Clause.

The Commerce Clause, which grants Congress the power to regulate commerce among the states, has long been interpreted to "prohibit state laws that unduly restrict interstate commerce." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019). "This 'negative' aspect of the Commerce Clause," generally known as the dormant Commerce Clause, "prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269 (1988). Under the dormant Commerce Clause, "state statutes that clearly discriminate against interstate commerce are routinely struck down, unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *Id.* (internal citations omitted).

Oklahoma's medical marijuana laws contain restrictions on a non-resident's ability to obtain a medical marijuana business license. *See* Okla. Stat. tit. 63, § 427.14. Mr. Shawn Phu contends that these residency restrictions plainly discriminate against non-residents and therefore violate the dormant Commerce Clause. Mr. Shawn Phu further posits that the validity of this state law is relevant to this prosecution of a federal crime because the essence of the government's case concerns defendants' alleged attempts to evade Oklahoma's residency requirements. Mr. Alex Phu and Mr. Stacy join in these arguments and further argue that, in light of the appropriations rider restricting the DOJ from spending

funds to prosecute actions taken in compliance with state law, a finding that the residency restrictions are unconstitutional would preclude the government from prosecuting the defendants for alleged violations of the residency restrictions.

Whatever the merits of Defendants' attack on the constitutionality of Oklahoma's state medical marijuana laws, this is not the correct proceeding to adjudicate that claim. As the Supreme Court stated in *Dennis v. United States*, 384 U.S. 855, 867 (1966), there are "appropriate and inappropriate ways to challenge acts of government thought to be unconstitutional." A criminal defendant's collateral attack on a statutory scheme that he is charged with deliberately circumventing falls into the latter category.

In *Dennis*, the defendants were convicted of conspiring to fraudulently obtain government services "by filing false affidavits in purported satisfaction of the requirements of s 9(h) of the National Labor Relations Act." *Id.* at 857. Section 9(h), which was later repealed, required affidavits attesting that applicants were not members of the Communist Party. *Id.* at 857-58. On appeal, defendants sought to overturn their convictions by arguing that Section 9(h) was unconstitutional. The Supreme Court rejected this argument:

> It is no defense to a charge based upon this sort of enterprise that the statutory scheme sought to be evaded is somehow defective. Ample opportunities exist in this country to seek and obtain judicial protection. There is no reason for this Court to consider the constitutionality of a statute at the behest of petitioners who have been indicted for conspiracy by means of falsehood and deceit to circumvent the law which they now seek to challenge.

*Id.* at 866 (footnote omitted). The Supreme Court was also unpersuaded by the defendants' argument that their case was somehow unique because the constitutional challenge went to the propriety of the very question they were accused of falsely answering:

> The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional. This is a prosecution directed at petitioners' fraud. It is not an action to enforce the statute claimed to be unconstitutional.

*Id.* at 867.

*Dennis'* "governing principle" was recently applied in *United States v. Holden*, 70 F.4th 1015, 1016 (7th Cir.), cert. denied, 144 S. Ct. 400 (2023). There, the defendant was charged with knowingly making a false statement that was likely to deceive a firearms dealer regarding a fact that was material to the lawfulness of the sale in violation of 18 U.S.C. § 922(a)(6). The defendant's false statement – that he was not under indictment for any felony – was material to the lawfulness of the sale because § 922(n) makes it a crime to purchase a firearm while under indictment for a felony. *Id.* Relying in part on *Dennis*, the Seventh Circuit held that "[t]his is not the proceeding…in which to adjudicate a contention that any particular application of § 922(n) violates the Second Amendment." *Id.* at 1018. Rather, "[s]omeone who wants a court to take such a step should file a declaratory-judgment action rather than tell a lie in an effort to evade detection that the sale would violate the statute." *Id.* at 1017.

The Second Circuit similarly relied on *Dennis* in rejecting a criminal defendant's ability to collaterally attack an administrative regulation. In *United States v. Stewart*, 590 F.3d 93, 111 (2d Cir. 2009), the defendant (an attorney) was charged with conspiring to defraud and obstruct the government in the enforcement of "special administrative measures" that restricted her client (who was incarcerated) from communicating with

persons outside the prison. The defendant argued that the special administrative measures were invalid for multiple reasons, but the Second Circuit found that the "strategy of collaterally attacking the validity of the SAMs [was] futile" because the prosecution was directed at the defendant's fraud and was "not an action to enforce the [law] claimed to be unconstitutional." *Id.* (internal quotation marks omitted).

Here, the prosecution is directed at Defendants' alleged conspiracy to manufacture and distribute marijuana; it is not an action to enforce Oklahoma's state medical marijuana laws. Accordingly, consistent with *Dennis* and its progeny, Defendants' collateral attack on Oklahoma's state statutory scheme is not appropriately raised in this proceeding.

Defendants attempt to side step *Dennis* by noting that it concerned conspiratorial false statements and is generally applied in cases that explicitly charge a defrauding offense. While a charge of fraud or false statement may be the most likely context in which *Dennis'* holding will apply, that does not mean *Dennis* is necessarily inapplicable in any other type of case. Moreover, the Indictment describes the alleged conspiracies as including fraudulent acts and the making of false statements in an attempt to evade the residency requirements. Thus, as in *Dennis*, the allegations describe "an effort to circumvent the law and not to challenge it." *Id.* 865. In that situation, a criminal defendant is "in no position to attack the constitutionality" of the underlying statute. *Id.* at 865.

Finally, it bears reiterating that the manufacture, distribution, or possession of marijuana "remains prohibited by federal law" regardless of state law. *McIntosh*, 833 F.3d 1163, 1179 n.5 (9th Cir. 2016). Thus, even if Oklahoma's residency requirements were

declared invalid, that would not render Defendants conduct somehow compliant with federal law.

Defendant Chanh "Shawn" Phu's Motion to Dismiss Indictment as Oklahoma's Residency Requirement in Marijuana Grow Ownership is Unconstitutional Under the Dormant Commerce Clause [Doc. No. 92] is therefore DENIED.

## CONCLUSION

As set out above, the following motions are denied: Defendant Chanh "Shawn" IU Phu's Motion to Strike Surplus language from the Indictment [Doc. No. 80]; Defendant Stacy's Motion to Dismiss as 21 U.S.C. §§ 841 and 856 are Void for Vagueness as Applied Here [Doc. No. 82]; Defendant Stacy's Motion to Dismiss for Failure to Plea Necessary Mens Rea Element [Doc. No. 83]; Defendant Stacy's Motion to Dismiss for Improper Classification of Marijuana Under the Controlled Substances Act [Doc. No. 84]; Defendant Stacy's Motion to Dismiss Under the Commerce Clause [Doc. No. 85]; Defendant Chong IU Phu's Motion for a Bill of Particulars [Doc. No. 88]; Defendant Chong IU Phu's Motion to Strike Prejudicial Surplusage [Doc. No. 89]; Defendant Chanh "Shawn" IU Phu's Motion to Dismiss Indictment as Oklahoma's Residency Requirements in Marijuana Grow Ownership is Unconstitutional Under the Dormant Commerce Clause [Doc. No. 92]; and Defendant Chanh "Shawn" IU Phu's Motion for Change of Venue Due to Negative and Biased Publicity and Publicized Racial Comments of Oklahoma Governor Kevin Stitt and Other(s) of Chinese or Asian Descent [Doc. No. 93].

IT IS SO ORDERED this 27th day of February, 2025.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE