**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CR-24-146-R |
| ) | |
| MATTHEW ALAN STACY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is the Government's Motion to Declare Communications Subject to the Crime Fraud Exception and Compel Production of a Privilege Log [Doc. No. 280] and Defendant Stacy's Motion to Suppress Unreasonably Executed Search Warrant [Doc. No. 285]. Both motions are fully briefed [Doc. Nos. 284, 288, 291, 293, 294] and at issue. The Court held a telephonic hearing on February 11, 2026 at which counsel for the government and Mr. Stacy presented argument in support of their respective positions. After careful consideration, the Court concludes that no evidentiary hearing is necessary and that both motions should be denied.

*Background*

Mr. Stacy is charged in an Indictment with one count of conspiring to manufacture, distribute, or possess with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), and one count of maintaining a drug involved premises, in violation of 21 U.S.C. 21 U.S.C. § 845(a)(2). Broadly stated, the Indictment alleges that Mr. Stacy, an attorney,

1

utilized a straw ownership scheme to help his clients evade state residency and licensing requirements related to medical marijuana businesses.

On August 8, 2024, the United States sought and obtained a search warrant to conduct a search of Mr. Stacy's cell phone. *See* Doc. No. 280-1. The warrant included Attachment B, which describes the items to be searched and seized as evidence of the alleged criminal offenses. *Id.* Attachment B also includes the following provision:

> The Prosecution Team expects that the SUBJECT PHONE may potentially contain materials that are potentially attorney-client privileged or subject to the work product doctrine ("protected materials"). A Filter Team of government attorneys and support personnel has been established. The Filter Team will have no future involvement in the investigation of this matter. The Filter Team will review seized communications and segregate potentially protected materials, i.e., communications that are to/from an attorney, or that otherwise reference or reflect attorney advice. At no time will the Filter Team advise the Prosecution Team of the substance of any of the potentially protected materials. The Filter Team then will provide all communications that are not potentially protected materials to the Prosecution Team and the Prosecution Team may begin its review. If the Filter Team concludes that any of the potentially protected materials are not protected (e.g., the communication includes a third party or the crime-fraud exception applies), the Filter Team must obtain either agreement from defense counsel/counsel for the privilege holder or a court order before providing these potentially protected materials to the Prosecution Team.

*Id*. Pursuant to the warrant, the government downloaded the contents of the phone.

In late August 2024, counsel for Mr. Stacy and the government exchanged emails about the download of the phone and a privilege protocol. On October 11, 2024, Mr. Stacy's counsel memorialized in an email that he and the government's filter attorney had agreed to a privilege protocol. Specifically, that the filter attorney would review the materials and, if the filter attorney determines that any item is not privileged, he will provide defense counsel with an opportunity to review the item and seek judicial review

before the item is provided to the prosecution team. *See* Doc. No. 288-1. In September 2025, the filter attorney indicated that he had identified categories of content, such as calendar entries, device locations, and web history, that did not appear to be privileged but had also identified communications that did appear to be privileged. *See* Doc. No. 288-2. Defense counsel reiterated that they are asserting that communication and non-communication content may be subject to various privileges, including the attorney-client privilege. *Id.*

Now, approximately eighteen months after seizing and downloading the contents of the phone, the government seeks an order finding that that the crime fraud exception to the attorney-client privilege applies to any communications contained on the phone between Mr. Stacy and "any marijuana client." The government also requests that Mr. Stacy be ordered to provide a privilege log identifying any client communications that he believes are privileged. Mr. Stacy opposes this request and relatedly moves to suppress the entire contents of the phone based on the government's alleged failure to begin or complete its review of the phone within a reasonable time.

*Discussion*

### A. Timeliness of the Post-Seizure Review

Mr. Stacy contends that the government's failure to begin or complete its post-seizure review of the cell phone within a reasonable period of time violates the Fourth Amendment and all evidence seized pursuant to the search warrant should therefore be suppressed.

"Even if a warrant is facially valid, suppression may be required when the warrant is executed in an unreasonable manner." *United States v. Hall*, No. 3:18-CR-0623-S, 2023 WL 2674855, at *8 (N.D. Tex. Mar. 29, 2023). In the context of a search warrant involving a phone or computer, numerous courts have recognized that the post-seizure review of electronic data can be more complex than a search of physical items and involve significantly more time.[1] *United States v. Jarman,* 847 F.3d 259, 266 (5th Cir. 2017); *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005); *United States v. Gregoire*, 638 F.3d 962, 967 (8th Cir. 2011); *United States v. Ganias*, 824 F.3d 199, 215 (2d Cir. 2016). "The Fourth Amendment contains no requirements about when the search or seizure is to occur or the duration." *Jarman*, 847 F.3d 259, 266 (5th Cir. 2017) (quotation marks and brackets omitted); *see also United States v. Sims,* 428 F.3d 945, 955 (10th Cir. 2005) ("The Fourth Amendment does not specify that search warrants contain expiration dates."). Whether a post-seizure review of data has been executed in a timely manner is therefore governed by the Fourth Amendment's mandate of reasonableness. In assessing the reasonableness of a delay, courts must "take account of the totality of the circumstances in each case." *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013).

Here, the duration of the post-seizure review is not unreasonable under the Fourth Amendment. The search of Mr. Stacy's phone is more complex than might normally be the case given that he is an attorney and the charges are premised, at least in part, on legal

---

[1] Federal Rule of Criminal Procedure 41 authorizes the off-site review of electronic stored data and similarly contemplates that "[a] substantial amount of time can be involved in the forensic imaging and review of information." Fed. R. Civ. P. 41(e)(2)(B) advisory committee's note to 2009 amendment.

4

services provided to certain clients. The phone likely contains a significant amount of potentially privileged material which necessarily requires a careful, and thorough, review process. *See Jarman*, 847 F.3d at 266 (explaining that "it is appropriate to screen privileged information" and the filter process is "designed to protect [the defendant's] clients' privileged information"). Further, unlike the primary case relied on by Mr. Stacy, the government promptly assigned a filter attorney, started the review process, and has not disregarded any directions from the court in connection with the review. *See United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012) ("The government then failed to commence the review, despite repeated requests from defense counsel and directions from the Court to do so."). Under these specific circumstances, the government's delay in completing the post-seizure review does not violate the Fourth Amendment.

Additionally, "[i]n addressing the timeliness of execution of a search warrant, the focus is whether there is still probable cause to support a search." *United States v. Warner*, No. CR 19-4275 WJ, 2021 WL 1227618, at *5 (D.N.M. Mar. 31, 2021), aff'd, 131 F.4th 1137 (10th Cir. 2025). Here, there is no reason to think that the delay in the post-seizure review of the phone has rendered the information in the warrant stale. *See United States v. Burgess,* 576 F.3d 1078, 1097 (10th Cir. 2009) ("Probable cause to search was unaffected by the delay and the reasons to search the computer and hard drives did not dissipate during the month and a half the items sat in an evidence locker."); *Jarmon*, 847 F.3d at 267 ("Moreover, Jarman has not argued that the delay caused the warrant to become stale.").

The Motion to Suppress is therefore denied.

### B. The Crime-Fraud Exception

The government seeks an order declaring "any communications between Mr. Stacy and a marijuana client that occurred from August 2019 through March 2023" as subject to the crime-fraud exception to the attorney-client privilege. The government's position is that Mr. Stacy's communications with his "marijuana clients" are co-extensive with his criminal relationship to the client's conduct and made in furtherance of ongoing criminal activity. The government further asserts that the burden rests with Mr. Stacy to identify any communications that fall outside the scope of the crime-fraud exception.

The attorney-client privilege protects confidential communication between an attorney and a client made in connection with legal representation. *See United States v. Zolin*, 491 U.S. 554, 562 (1989). Although the privilege is important, is it not inviolate: "The attorney-client relationship is no shield for either the attorney or the client if the purpose of the communication is to further a crime or an intended crime." *In re Sept. 1975 Grand Jury Term*, 532 F.2d 734, 737 (10th Cir. 1976). The crime-fraud exception "assure[s] the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *Zolin*, 491 U.S. at 563 (internal quotation marks and citations omitted). The exception can be applied "to both the attorney-client privilege and the work-product doctrine." *In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir. 1998).

"To invoke the crime-fraud exception, the party opposing the privilege must present prima facie evidence that the allegation of attorney participation in the crime or fraud has some foundation in fact." *Id.* This requires showing that "the client was engaged in or was

6

planning the criminal or fraudulent conduct when it sought the assistance of counsel and that the assistance was obtained in furtherance of the conduct or was closely related to it." *Id.* In determining whether the crime-fraud exception applies, the court should "define the scope of the crime-fraud exception narrowly enough so that information outside of the exception will not be elicited[.]" *Id.* at 661.

Applying these standards, the Court finds that the government's request is overly broad. The Indictment and the Court's prior findings certainly present some evidence that certain clients communicated with Mr. Stacy in furtherance of criminal or fraudulent conduct. However, "no case stands for the proposition that, when a *prima facie* showing is made that a client has consulted with his attorney for the purpose of furthering a crime or fraud, the privilege entirely disappears, subjecting everything in connection with that client's representation with that attorney to disclosure." *In re Grand Jury Subpoena*, 419 F.3d 329, 344 (5th Cir. 2005). Rather, the exception is "limited to those communications made and documents produced in furtherance of the ongoing or future crime or fraud, no longer protected by the privileges." *Id.*

As Mr. Stacy notes in his brief, it is hardly unreasonable to believe that he may have communicated with his "marijuana clients" about a variety of legitimate legal matters that have nothing to do with the drug conspiracy charged in this case. Such communications would not be "in furtherance of" or "closely related" to alleged criminal conduct and would therefore fall outside the scope of the crime-fraud exception. Further, the government's suggestion that any legal consultations about marijuana businesses are subject to the crime fraud exception because marijuana is illegal under federal law is a nonstarter and only

7

serves to underscore the unreasonable breadth of their request. The government has not identified any specific clients or a specific subset of communications that fall within the scope of the exception and the Court will not simply assume that any and all clients that communicated with Mr. Stacy about state marijuana laws or marijuana businesses did so in furtherance of criminal or fraudulent conduct.

The Court is equally unpersuaded by the government's request to foist the burden of searching the phone onto Mr. Stacy. While Mr. Stacy bears the burden of supporting a claim of privilege, the terms of the search warrant specifically provide that the government will review the seized communications, segregate the potentially privileged material, and either obtain agreement from defense counsel or the Court before releasing the information to the prosecution team. Put simply, the government, not Mr. Stacy, is charged with executing the search warrant.

## *Conclusion*

For the reasons stated above, the Government's Motion to Declare Communications Subject to the Crime Fraud Exception and Compel Production of a Privilege Log [Doc. No. 280] is DENIED and Defendant Stacy's Motion to Suppress Unreasonably Executed Search Warrant [Doc. No. 285] is DENIED.

IT IS SO ORDERED this 24th day of February, 2026.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE